UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAWN THOMPSON,

        Plaintiff,

  -vs-

COMBINED SYSTEMS, INC.,

        Defendant.

**DECISION and ORDER
No. 6:17-cv-06007(MAT)**

## INTRODUCTION

Represented by counsel, Dawn Thompson ("Plaintiff"), a resident of Florida, instituted this proceeding alleging causes of action for breach of contract and promissory estoppel against Combined Systems, Inc. ("CSI" or "Defendant"), a registered New York corporation with a principal place of business in Pennsylvania. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

Thompson Handcuffs Corporation ("Thompson Handcuffs" or "THC") was founded by Charles Thompson in the 1980s. In July of 2010, CSI, CSI-Penn Arms, LLC, a wholly-owned subsidiary of CSI; Charles Thompson; and Plaintiff entered into an Asset Purchase Agreement ("the Purchase Agreement"), whereby certain assets of Thompson Handcuffs were sold to CSI. As of the date the Purchase Agreement was executed, Plaintiff owned all of THC's issued and outstanding

capital stock, and was responsible for the day-to-day operations of the business.

The purchase price is reflected in Paragraph 1.3 of the Purchase Agreement which states in relevant part as follows:

> 1.3. Purchase Price. The total purchase price (the "Purchase Price") which the Buyer shall pay for the Assets and in consideration of the covenants of the Sellers contained herein is:
>
> > (a) 300,000.00 in cash, of which (x) $200,000.00 is payable at the Closing (the "Initial Payment") and (y) the remainder is payable in installments as follows:
> >
> > > (i) For each pair of handcuffs sold by the Buyer after the Closing the Buyer will pay the Company $0.25 until the aggregate amount of all such payments as to pairs of handcuffs sold by the Buyer after the Closing equals $100,000.00 (each such payment, an "Installment Payment"), it being recognized that
> > >
> > > > (A) in no event shall the total amount of installment Payments exceed $100,000.00 (the "Installment Cap") . . . .

Purchase Agreement, ¶ 1.3, Exhibit ("Ex.") A to First Amended Complaint ("FAC") [#10-1][1]. CSI paid Thompson Handcuffs the sum of $200,000 at the closing and continued to make annual Installment Payments to Thompson Handcuffs. As of January 1, 2017, CSI had paid Plaintiff a total of $22,892.26 toward the remaining $100,000 Installment Cap.

---

[1] Numerals preceded by "#" in brackets refer to the document number assigned by CM/ECF on the case docket.

In the Purchase Agreement's "Recitals" section, the parties included language regarding CSI's continued employment of Plaintiff. Specifically, one of the "whereas" clauses states that "the Buyer wishes to employ [Plaintiff] from and after the Closing (as hereinafter defined) at CSI's facility in Jamestown, Pennsylvania, in a sales and marketing capacity on an at-will basis[.]" Purchase Agreement, p. 1.

In July of 2010, CSI sent Plaintiff a letter offering her a position of employment. The letter is referenced in Plaintiff's first amended complaint, see FAC, ¶¶ 26-37, and states in pertinent part as follows:

> In order to support the sales efforts of THC into the future, we are pleased to offer you a position as a Sales Manager of the THC brand for CSI. . . .
>
> As the Sales Manager of the THC product line, you will be responsible for the development of sales for the domestic and international markets, as determined by CSI management. You will work closely with the other members of the CSI sales team and you will participate in weekly sales conference calls and other designated meetings, reporting on your prospects and sales activities to CSI senior management.

Plaintiff accepted the employment offer and agreed that she would be based out of CSI's headquarters, which required her to relocate from Illinois to Jamestown, Pennsylvania.

Plaintiff was employed by CSI as the sales manager of the Thompson Handcuffs brand beginning August 1, 2010. She held this position until her termination by CSI on or about July 17, 2013.

## PROCEDURAL STATUS OF THIS ACTION

On January 1, 2017, Plaintiff filed the instant complaint [#1] asserting that CSI breached its obligations under the Purchase Agreement, wrongfully terminated her employment prior to the expiration of their oral employment agreement, and failed to reimburse her for the costs she incurred in relocating to Pennsylvania.

On February 14, 2017, CSI filed a pre-answer motion to dismiss pursuant to Rule[2] 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.

On March 8, 2017, Plaintiff filed a first amended complaint [#10]. CSI then moved to dismiss the first amended complaint or, in the alternative, for summary judgment [#11]. Plaintiff filed a motion for extension of time to file an amended complaint or, in the alternative, for leave to amend [#12]. CSI filed a memorandum in opposition [#13], and Plaintiff filed a reply brief [#14].

Plaintiff subsequently filed a memorandum of law in opposition to CSI's first motion to dismiss or, in the alternative, for summary judgment [#16], and a memorandum of law in opposition to CSI's second motion to dismiss or, in the alternative, for summary judgment [#17]. CSI filed a reply brief. [#18].

---

[2]
Citations to "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

For the reasons discussed below, the Court grants Plaintiff's request for leave to amend, and replaces the complaint with the first amended complaint. The Court grants CSI's motions to dismiss or, in the alternative for summary judgment, and dismisses the first amended complaint.

**DISCUSSION**

**I.   Plaintiff's Motion for Extension of Time to File Amended Complaint or, in the Alternative, for Leave to Amend**

On March 23, 2017, Plaintiff filed a motion seeking a <u>nunc pro tunc</u> extension of time to file an amended complaint or, in the alternative, permission to file an amended complaint [#12]. In her supporting memorandum of law, Plaintiff also suggests that the Court deny Defendant's first motion to dismiss or, in the alternative, for summary judgment as moot in light of the fact that she filed an amended complaint. Defendant requests that Plaintiff's first amended complaint, filed without leave and while its first motion to dismiss or, in the alternative, for summary judgment was pending, be stricken.

Plaintiff's motion is governed by Rule 15(a)(1), which provides in relevant part as follows:

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days

> after service of a motion under Rule 12(b),
> (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1). Here, the operative pleading is Plaintiff's complaint, filed on January 1, 2017. Because it is the type of pleading which requires a responsive pleading, subsection (B) applies.

CSI filed its first motion to dismiss, which sought relief under Rule 12(b)(6), on February 14, 2017 [#9]. Plaintiff did not file opposition papers to this motion. Instead, on March 8, 2017, twenty-two (22) days after Defendant's service of its first motion to dismiss under Rule 12(b)(6), Plaintiff filed a first amended complaint. Because the first amended complaint was filed more than 21 days after service of CSI's Rule 12(b)(6) motion, it was untimely under Rule 15(a)(1)(B). Accordingly, Defendant requests that the amended complaint be stricken.

Plaintiff notes that its amended complaint was filed less than 24 hours late and asserts that delay was the result of a "good faith mistake," namely an "inadvertent internal calendaring error." Plaintiff requests a <u>nunc pro tunc</u> extension of time be granted pursuant to Rule 6(b)(1)(B) which allows the court, "for good cause," to grant extensions of time "on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B). Alternatively, Plaintiff requests permission to amend under Rule 15(a) which provides that

leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a).

"The Second Circuit has held that a Rule 15(a) motion [for leave to amend] 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987); other citation omitted). Ultimately, it is "within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citation omitted). Here, there is no evidence of undue delay, bad faith, or dilatory motive on the part of Plaintiff. Nor have there been repeated failures to cure deficiencies by amendment previously allowed. Finally, since this matter is still in its nascency, the Court cannot see any potential for prejudice to Defendant if amendment is permitted. See Foman v. Davis, 371 U.S. 178, 182 (1962) (reasons for denying leave include "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment"). Accordingly, the Court exercises its discretion to allow Plaintiff to file an amended complaint. The

original complaint is hereby replaced by the first amended complaint, which is now the operative pleading in this matter.

## II. Defendant's Motions to Dismiss or, in the Alternative, for Summary Judgment

### A. Whether to Apply the Rule 12 or Rule 56 Standard

CSI has moved to dismiss the complaint and first amended complaint under Rule 12(b)(6) for failure to state a claim, or, in the alternative, for summary judgment dismissing the complaint and first amended complaint under Rule 56. Plaintiff argues that CSI's request for summary judgment is premature since no discovery has occurred. See, e.g., Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (citations omitted). Although it is true that courts do not often grant summary judgment prior to discovery, "there is nothing in the Federal Rules of Civil Procedure precluding summary judgment—in an appropriate case—prior to discovery." Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp.2d 330, 346 (S.D.N.Y. 2009). Indeed, the clear language of Rule 56 allows a defendant to "move *at any time*, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b) (emphasis supplied).

When a non-movant legitimately requires discovery to meet a motion for summary judgment, Rule 56(d)[3] "is the mechanism for addressing that need." Emigra Grp., LLC, 612 F. Supp.2d at 346. Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

Here, however, Plaintiff did not avail herself of Rule 56(d) by submitting an affidavit or declaration specifying the reasons[4] why she is unable to factually counter Defendant's motion for summary judgment. Plaintiff's reference to the need for additional discovery in her memorandum of law is not a substitute for a Rule 56(d) affidavit or declaration, the absence of which is a

---

[3]

Following the 2010 Amendments to Rule 56, "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." FED. R. CIV. P. 56, Advisory Comm. Notes to 2010 Amendments. Former subdivision (f) provided that "[i]f the non-moving party makes a sufficient showing by affidavit, a motion for summary judgment will be denied or delayed to permit discovery that is reasonably expected to create a genuine issue of material fact." FED. R. CIV. P. 56(f) (former) (quoted in Emigra Grp., LLC, 612 F. Supp.2d at 346).

[4]

The Second Circuit has "established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56([d]). The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) (applying former Rule 56(f) in effect prior to 2010 amendments; citations omitted).

sufficient basis to reject Plaintiff's assertion that she requires access to discovery. <u>See</u> <u>Paddington Partners</u>, 34 F.3d at 1137 (applying former Rule 56(f) in effect prior to 2010 amendments; stating that "[a] reference to Rule 56([d]) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56([d]) affidavit, and the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate") (internal and other citations omitted). The deficiencies in Plaintiff's submissions, which were pointed out by Defendant and which Plaintiff has taken no steps to remedy, leave the Court with no basis for deferring a ruling on Defendant's properly supported motions for summary judgment.

Nonetheless, in the interest of completeness, the Court has analyzed the first amended complaint under both Rule 12(b)(6) and Rule 56(a). Plaintiff's claims essentially stand or fall based on the parties' Purchase Agreement, which Plaintiff has attached as an exhibit to both her complaints. Accordingly, the Court is entitled to consider the Purchase Agreement, even under Rule 12(b)(6). <u>Brass v. American Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as

true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiff had knowledge and relied on in bringing suit.") (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

As discussed below, the Court finds that Plaintiff cannot state plausible claims for relief so as to withstand dismissal pursuant to Rule 12(b)(6). The Court also finds that Plaintiff's causes of action fail as a matter of law, and that there are no genuinely disputed issues of material fact sufficient to allow this case to proceed further.

**B.   Viability of Plaintiff's Causes of Action**

### 1.   Breach of Contract (Implied Covenant of Good Faith and Fair Dealing) Based on Purchase Agreement

Plaintiff's first cause of action alleges a breach of the implied covenant of good faith and fair dealing based on CSI's alleged failure to fulfill certain obligations under the Purchase Agreement.

Under New York law, "a duty of good faith and fair dealing is implied in every contract[.]" United States Fidelity & Guar. Co. v. Braspeto Oil Servs. Co., 369 F.3d 34, 64 (2d Cir. 2004) (footnote omitted). "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative."

Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05-CV-8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (quotation omitted). Here, however, Plaintiff does not allege a separate breach of contract claim, and thus her breach of implied covenant claim need not be dismissed for redundancy.

"'The elements of a claim for breach of the duty of good faith and fair dealing are practically identical to the elements of a negligence claim': (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." Washington v. Kellwood Co., 05 Civ. 10034(DAB), 2009 WL 855652 at *6 (S.D.N.Y. Mar. 24, 2009) (quoting Boyd v. University of Illinois, 96 Civ. 9327(TPG), 2001 WL 246402 at *10 (S.D.N.Y. Mar. 13, 2001)). "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, 552 F. App'x 13, 16 (2d Cir. 2014) (unpublished opn.) (quoting Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 265 A.D.2d 513, 514, 697 N.Y.S.2d 128 (2d Dep't 1999)).

Plaintiff alleges that under New York law, which governs the Purchase Agreement,[5] the covenant of good faith and fair dealing obligated CSI "to avoid doing anything which has the effect of depriving [her] of the right to receive the benefits due to her under the Purchase Agreement." FAC, ¶ 64. Plaintiff further alleges that the Purchase Agreement contained a "royalty agreement" based on CSI's exclusive ability to sell the handcuffs, and therefore the implied covenant of good faith and fair dealing required CSI to undertake at least "reasonable efforts" to market and sell handcuffs. Id., ¶ 65. According to Plaintiff, "in the course of negotiating and executing the Purchase Agreement, CSI made a series of express representations regarding the efforts it would take in order to grow the sales of Thompson [H]andcuffs[,]" id., ¶ 66, but ultimately failed to fulfill those representations or its contractual obligations, which "resulted in continuously declining sales of handcuffs, and therefore a reduction in the amount of royalties received by [Plaintiff]." Id., ¶ 68.

CSI argues that it fully complied with all of its obligations under the Purchase Agreement. Pointing to the integration clause in Paragraph 7.6[6] of the Purchase Agreement, CSI argues that Plaintiff

---

[5]

The Purchase Agreement states that it will be construed in accordance with "the laws of the State of New York; provided, however, that Section 5.6 [No Competition; No Solicitation; No Inducement] shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania."

[6]

Paragraph 7.6 provides in relevant part as follows:

-13-

is attempting to impose obligations not contemplated by the parties at the time of drafting and signing the agreement. CSI is correct that the implied covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." <u>Broder v. Cablevision Sys. Corp.</u>, 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted). Nonetheless, courts have stated that "a party may be in breach of the duty even when it has abided by the express terms of the contract." <u>In Touch Concepts, Inc. v. Cellco P'ship</u>, 949 F. Supp.2d 447, 466 (S.D.N.Y. 2013) (citations omitted)). And, the presence of an integration or merger clause in the parties' agreement "does not prevent a court from inferring a covenant of good faith and fair dealing[,]" <u>SNS Bank, N.V. v. Citibank, N.A.</u>, 777 N.Y.S.2d 62, 65, 7 A.D.3d 352, 354-55 (1st Dep't 2004), "as long as the implied term is consistent with other terms in the contract[.]" <u>Dorset Indus., Inc.</u>, 893 F. Supp.2d at 407. Furthermore, the fact that the Purchase Agreement is "silent on these issues is not necessarily fatal to the Plaintiff's claim

---

This Agreement (including the schedules and exhibits attached hereto) and the documents and instruments delivered pursuant hereto constitute the entire agreement and understanding among the Sellers and the Buyer with respect to the subject matter hereof and supersede all prior and current understandings and agreements, whether written or oral, with respect to the subject matter hereof. This Agreement may be modified or amended only by a written instrument executed by the Sellers and the Buyer.

<u>Id.</u>, ¶ 7.6; italics in original.

-14-

because New York does not require that a breach of the duty of good faith and fair dealing be tied to a specific contractual provision." <u>Dorset Indus., Inc. v. Unified Grocers, Inc.</u>, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) (citing <u>Havel v. Kelsey-Hayes Co.</u>, 83 A.D.2d 380, 445 N.Y.S.2d 333 (4th Dep't 1981) ("[T]hat a specific promise has not been expressly stated does not always mean that it was not intended."); other citation omitted).

CSI contends, however, that the alleged acts and omissions cited by Plaintiff, "even if true, would create new, substantive, and burdensome contractual provisions that do not exist in the Purchase agreement." CSI's Reply [#11-1] at 3. As CSI correctly points out, "the implied covenant of good faith and fair dealing is not designed to enlarge or create new substantive rights between parties." <u>Ferguson v. Lion Holding, Inc.</u>, 478 F. Supp.2d 455, 479 (S.D.N.Y. 2007) (citing <u>Don King Productions, Inc. v. Douglas</u>, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) ("The implied covenant . . . simply 'ensures that parties to a contract perform the substantive, bargained-for terms of their agreement' and that parties are not unfairly denied 'express, explicitly bargained-for benefits.'") (quotation and other citation omitted)). Moreover, "[t]he implied covenant does not 'undermine a party's "general right to act on its own interests in a way that may incidentally lessen"' the other party's expected benefit." <u>Security Plans, Inc. v. CUNA Mut. Ins. Soc.</u>, 769 F.3d 807, 817 (2d Cir. 2014) (quoting <u>M/A-COM Sec. Corp.</u>

v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (per curiam); further quotation omitted).

CSI in particular argues that Plaintiff mischaracterizes the Purchase Agreement as containing a provision for the payment of "royalties." The "royalties" mentioned by Plaintiff are a reference to the manner in which the purchase price was calculated under the Purchase Agreement. As noted above, the total purchase price was set at $300,000.00 in cash, of which $200,000.00 was payable to Plaintiff at the closing date. As per the terms of the Purchase Agreement, Plaintiff received $200,000.00 in cash at the time of closing. The remainder of the purchase price was to be made in installment payments, and calculated as follows: "[f]or each pair of handcuffs sold by [CSI] after the Closing[,] [CSI] will pay [Plaintiff] $0.25 until the aggregate amount of all such payments as to pairs of handcuffs sold by [CSI] after the Closing equals $100,000.00," but "in no event shall the total amount of installment payments [to Plaintiff] exceed $100,000.00." Plaintiff does not assert, nor can she, that CSI has failed to make any required installment payments based on the number of pairs of handcuffs sold after the closing date. Rather, Plaintiff faults CSI for not selling enough pairs of handcuffs at a sufficiently brisk pace. Plaintiff complains that if CSI had used "reasonable marketing efforts," it "would have—and could have—sold over 400,000 handcuffs in the six years following the sale of THC to CSI." FAC,

¶ 51. What CSI could have or should have done is of no moment because the Purchase Agreement does not establish a deadline for it to make the remaining installment payments up to the $100,000-Installment Cap. Thus, there is no basis in the Purchase Agreement for finding that Plaintiff bargained for the benefit of having CSI sell a certain number of handcuffs during a fixed timeframe. Consequently, Plaintiff cannot plausibly claim that she was deprived of "express, explicitly bargained-for benefits." Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1517 (S.D.N.Y. 1989); see also Ferguson, 478 F. Supp.2d at 479 (rejecting implied covenant claim as a matter of law; plaintiffs "seem[ed] to be attempting to create new contractual rights that they did not previously bargain for[,]" since they "never retained a right to object to intra-company expense reallocations for the purpose of having those decisions excluded from the Earnout calculation").[7]

The alleged acts and omissions attributed to CSI are not breaches of the Purchase Agreement but merely represent Plaintiff's critique of the way CSI ran its newly acquired business[8] and

---

[7] CSI indicates that it is continuing to make the required installment payments under the Purchase Agreement, and Plaintiff does not dispute this.

[8] For instance, Plaintiff faults CSI for "[n]ot providing a marketing and advertising program or budget for THC handcuffs"; "[f]ailing to publicize Thompson Handcuffs' selection as a finalist for an Innovation Award from Law Enforcement Technology Magazine, despite the fact that publicizing the award could have been done with limited effort and/or expense"; "[f]ailing to sufficiently identify or discuss THC handcuffs in marketing materials provided to representatives, distributors, and customers"; "[a]ssigning handcuff sales

managed her as an employee.[9] However, "New York courts generally will not disturb actions taken pursuant to a party's business judgment[.]" <u>Security Plans, Inc. v. CUNA Mut. Ins. Soc.</u>, 769 F.3d 807, 819 (2d Cir. 2014) (citing <u>Nikitovich v. O'Neal</u>, 836 N.Y.S.2d 34, 35 (1st Dep't 2007)). Even assuming the correctness of Plaintiff's criticisms about CSI's business decisions regarding THC, she "must show substantially more than evidence that [CSI]'s actions were negligent or inept." <u>Security Plans, Inc.</u>, 769 F.3d at 817 (citations omitted). "The covenant will be breached only in a narrow range of cases[,]" <u>id.</u>, and Plaintiff's allegations do not place her case in that range.

## II. Breach of Contract Based on Alleged Employment Agreement

For her second cause of action, Plaintiff alleges that she and CSI "were parties to a valid Employment Agreement for a definite term[,]" FAC, ¶ 72, and that CSI "was obligated to refrain from terminating [her] without just cause during the term of the agreement." <u>Id.</u>, ¶ 73. Plaintiff contends that in July of 2013, CSI

---

duties to employees lacking the experience to effectively sell handcuffs and the time and/or ability to adequately sell handcuffs"; "[r]efusing to provide the training program designed by THC for the THC handcuffs"; "[f]ailing to adequately educate distributors regarding the THC brand, including, for example, by devoting little to no time to the handcuffs during a meeting with all distributors in Las Vegas, Nevada, in September, 2012"; and "[r]efusing to advertise the handcuffs in trade magazines".

[9]
    Plaintiff faults CSI for "[r]efusing to permit [Plaintiff] . . . to communicate with specific handcuff customers"; "[d]emoting [Plaintiff] from her position as Sales Manager of the THC brand" and giving her "mundane busy work, such as paper shredding, rather than allowing her to actively work to sell handcuffs"; and terminating Plaintiff's employment without cause, in disregard of her 20-plus years of experience in handcuff sales. <u>See</u> FAC, ¶ 38(a)-(j).

"breached the Employment Agreement by terminating [her] for reasons wholly unrelated to her job performance." Id., ¶ 74.

"The elements of a breach of contract claim under New York law are '(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach.'" Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) (quoting K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 827 F. Supp. 985, 988 (S.D.N.Y. 1993); citing Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997)). In the employment context, "'[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'" Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001) (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987)); see also Bernhardt v. Tradition N. Am., 676 F. Supp.2d 301, 304-05 (S.D.N.Y. 2009) ("Where a term of employment is for an indefinite period of time, it is presumed to be an employment at will that is freely terminable by either party at any time for any reason or even for no reason."). Pursuant to clear New York State precedent, "the at-will presumption may be triggered when an employment agreement fails to state a 'definite period of employment,' 'fix[ ] employment of a definite duration,' 'establish[ ] a fixed duration' or is otherwise 'indefinite[.]'"

Rooney v. Tyson, 91 N.Y.2d 685, 689, 697 N.E.2d 571, 573 (1998) (collecting cases; quotations omitted; brackets in original).

CSI chiefly argues that there was no employment contract, much less one for a definite term. Rather, CSI asserts, the Purchase Agreement signed by Plaintiff in July of 2010 establishes that Plaintiff was an "at will" employee. As noted above, one of the "whereas" clauses in the Purchase Agreement states that "[CSI] wishes to employ [Plaintiff] from and after the Closing . . . at CSI's facility in Jamestown, Pennsylvania, in a sales and marketing capacity on an at-will basis[.]" (Purchase Agreement, p. 1 (FAC, Ex. A). In the present case, the "at-will presumption" is "triggered" because neither the Purchase Agreement nor the July 2010 Offer Letter contain any mention of a definite period, duration, or term of employment. See Campeggi v. Arche Inc., No. 15 CIV. 1097(PGG), 2016 WL 4939539, at *5 (S.D.N.Y. Sept. 14, 2016) ("With respect to the contract's second term—'from January 1, 2007 forward at the discretion and exercisable by [Plaintiff]'–Plaintiff has not overcome the presumption of at-will employment. Indeed, such language constitutes an indefinite term as a matter of law.") (citing, inter alia, Weiler v. National Multiple Sclerosis Society, No. 79 Civ. 5856, 1980 WL 104, at *4 (S.D.N.Y. Feb. 27, 1980) ("The alleged oral employment contract, providing that plaintiff could work 'until he chose to retire,' is without doubt, a contract for an indefinite period of time. . . .")). As CSI points out, neither

the Purchase Agreement nor the July 2010 Offer Letter contains any mention of a duration, term, or tenure for Plaintiff's employment with CSI.

Plaintiff also attempts to allege a definite timeframe, by asserting in the first amended complaint that her alleged oral employment agreement[10] with CSI would not expire "until, at the earliest, CSI had sold sufficient handcuffs to satisfy the payment obligation in Paragraph 1.3 of the Purchase Agreement, which the parties expected to occur within five years of the sale." FAC, ¶ 34. However, under New York State law, "[i]t is well settled that an oral employment agreement for a period of one year to commence at a time subsequent to the making of the agreement is unenforceable against a plea of the Statute of Frauds[.]" Ginsberg v. Fairfield-Noble Corp., 440 N.Y.S.2d 222, 224 (2d Dep't 1981) (citing N.Y. GEN. OBLIGATIONS L. § 5-701(a)(1); Whitehill v. Maimonides School, 384 N.Y.S.2d 818; Hanan v. Corning Glass Works, 314 N.Y.S.2d 804)). Accepting the truth of Plaintiff's allegation regarding the five-year term requires a conclusion that any purported oral employment agreement is void under the Statute of Frauds because, "[b]y its terms[,] [it] [was] not to be performed

---

10

Plaintiff concedes that "the parties did not reduce the Employment Agreement to writing," but suggests that "on information and belief, CSI possesses documents, including, but not limited to, e-mail communications reflecting the existence of the Employment Agreement, and the precise terms of the agreement. . . ." FAC, ¶ 37.

within one year from the making thereof . . . ." N.Y. GEN. OBLIGATIONS L. § 5-701(a)(1)).

Plaintiff further argues that the statement in the Purchase Agreement's "Recitals" section "reflect[s] only CSI's position" regarding her employment status, and that CSI's "wish" to employ her on an at-will basis does not make it so. This argument deserves no weight, given that Plaintiff herself signed the Purchase Agreement, which contains a detailed integration clause indicating that it comprises Plaintiff's and CSI's "entire agreement and understanding," "supersede[s] all prior and current understandings and agreements, whether written or oral," and "may be modified or amended only by a written instrument executed by" Plaintiff and CSI.

As additional support for its argument that Plaintiff was an at-will employee, CSI has submitted a copy of the Non-Disclosure, Proprietary Rights Assignment, Unfair-Competition, Non-Solicitation and Non-Disparagement Agreement ("the NDA"), executed by Plaintiff on September 1, 2011. Section 2 of the NDA, titled "EMPLOYMENT AT WILL," provides as follows:

> I agree to conform to the rules and regulations of CSI, and *my employment and compensation can be terminated, with or without cause, and with or without notice, at any time*, at the option of CSI.
> I understand that no manager or representative of CSI, other than the president, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

NDA [#11], § 2; see also NDA, Introduction ("IN CONSIDERATION of, and as a condition of, [Plaintiff's] employment *at will* . . . . ") (emphasis supplied). CSI argues that this cements the conclusion that Plaintiff was an at-will employee, terminable at any time.

Plaintiff contends that the Court should not consider the NDA because it was not in her possession at the time she brought this lawsuit, citing the general rule that courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154–55 (2d Cir. 2006) ("Global")). Because the Court has deemed it appropriate to consider Defendant's motions in light of the Rule 56 summary judgment standard, the Court clearly may include the NDA in its analysis. The NDA provides additional grounds for refuting Plaintiff's assertion that her employment with CSI was anything other than "at will."

Even if the Court does not treat the motions under Rule 56, the Court "may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)[,]" Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007), such as "[d]ocuments that are attached to the complaint or incorporated in it by reference[,]" id. (citation omitted). A "necessary prerequisite for th[e] exception is that the 'plaintiff[ ] *rel[y]* on the terms and

effect of [the] document in drafting the complaint . . . ; mere notice or possession is not enough.'" Global, 458 F.3d at 156 (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); alterations, emphasis, and ellipsis in Global). Plaintiff argues that she did not rely on the terms of the NDA in framing her complaint, which is understandable since the NDA undermines her claim. However, this appears to be the type of situation in which the exception has been invoked most often, that is, where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global, 458 F.3d at 157 (citing Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196–97 (2d Cir. 2005)). Moreover, Plaintiff cannot credibly plead ignorance of the NDA, given that this document is specifically referenced in the Purchase Agreement, attached as an exhibit to Plaintiff's complaint and first amended complaint. In regards to the duties of the parties' at the time of closing, the NDA states that "[i]n connection with her employment . . . , [Plaintiff] shall execute and deliver to [CSI] a Non-Disclosure, Proprietary Rights Assignment, Non-Competition, Non-Solicitation and Non-Disparagement Agreement in a form furnished to her by [CSI][.]" Purchase Agreement [#10-1], § 2(b)(x). Thus, one of her obligations under

the Purchase Agreement was to sign the NDA that CSI provided to her. In light of these factors, the NDA arguably may be considered under a Rule 12(b)(6) analysis. But, as discussed above in this Section, even without considering the NDA, Plaintiff cannot state a claim for breach of an alleged oral employment agreement because she cannot plausibly allege that she had a contract of employment for a definite duration.

### 3. Promissory Estoppel

As her third cause of action, Plaintiff proceeds under a theory of promissory estoppel and seeks reimbursement for "all relocation and moving expenses." "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000). In the first amended complaint, Plaintiff asserts that under the alleged "Employment Agreement, [she] was also required to locate from Bedford Park, Illinois, to CSI's headquarters in Jamestown, Pennsylvania. In exchange for this consideration, CSI agreed to reimburse [her] for all relocation and moving expenses, including, but not limited to, the cost of packing and moving her personal belongings from Illinois to Pennsylvania and the cost of travelling from Illinois to Pennsylvania." FAC, ¶ 33.

Both the Purchase Agreement and the July 2010 Offer Letter reference the fact that Plaintiff's employment with CSI will be based out of Jamestown, Pennsylvania. Significantly, however, both documents are silent as to any reimbursement of Plaintiff's relocation expenses. Indeed, given their failure to reference relocation expenses at all, neither document can be interpreted as containing a "clear and unambiguous promise" to reimburse Plaintiff for such expenses. "A promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." Benefitvision Inc. v. Gentiva Health Servs., Inc., No. 09-CV-0473, 2014 WL 298406, at *9 (E.D.N.Y. Jan. 28, 2014) (alteration and internal quotation marks omitted). Plaintiff fails to allege that CSI had a duty independent of its obligations in their integrated Purchase Agreement. Accordingly, the Court finds that Plaintiff has failed to plead a plausible cause of action for promissory estoppel.

Furthermore, New York law "does not recognize promissory estoppel in the employment context." Deutsch v. Kroll Assocs., Inc., No. 02 CIV. 2892(JSR), 2003 WL 22203740, at *3 (S.D.N.Y. Sept. 23, 2003) (citing, inter alia, Graff v. Enodis Corp., No. 02 Civ. 5922, 2003 WL 1702026, at *2 (S.D.N.Y. Mar. 28, 2003) (employee sought recovery under theory of promissory estoppel based on employer's alleged promise that he would receive commissions, in

accordance with a written schedule, upon his procurement of orders, regardless of when shipped or invoiced; even assuming that employee "relied on that promise in leaving his previous employ and foregoing a change of employment, that would still be insufficient as a matter of law"); Pancza v. Remco Baby, Inc., 761 F. Supp. 1164, 1172 (D. N.J. 1991) (under New York law, "promises surrounding an employment relationship are insufficient to state a cause of action for promissory estoppel"); Dalton v. Union Bank of Switzerland, 520 N.Y.S.2d 764, 766 (1st Dept. 1987) ("The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.")). Plaintiff's claim for promissory estoppel fails as a matter of law on this basis.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's request for leave to amend, and replaces the complaint with the first amended complaint as the operative pleading. The Court further finds that the first amended complaint fails to state plausible claims for relief and, in the alternative, that CSI is entitled to judgment as a matter of law as to all of Plaintiff's claims. Accordingly, the Court grants CSI's motions to dismiss or, in the alternative, for summary judgment. The first amended

complaint is dismissed. The Clerk of Court is directed to close
this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     June 13, 2017
           Rochester, New York